RENDERED: NOVEMBER 1, 2018
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL

2017-SC-000005-DG

DATE 2/14/19 Kim Redman, DC

FREDERICK DORSEY                                                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                     CASE NO. 2014-CA-000809-MR
JEFFERSON CIRCUIT COURT NO. 09-CR-003446-001


COMMONWEALTH OF KENTUCKY                                          APPELLEE


**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING**

After denying Frederick Dorsey's motion to withdraw his guilty plea, the Jefferson Circuit Court imposed a thirty-five-year prison sentence on Dorsey in accordance with the plea agreement. Following sentencing, Dorsey filed a *pro se* Rule of Criminal Procedure (RCr) 11.42 motion, alleging that he received ineffective assistance of counsel and was coerced into taking the plea. The trial court denied Dorsey's motion and the Court of Appeals affirmed. We granted discretionary review to determine whether a conflict of interest existed when Dorsey's counsel represented him on the motion to withdraw the plea and whether Dorsey was coerced into entering a guilty plea. Finding neither a conflict of interest nor coercion, we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

On November 19, 2009, Frederick Dorsey was indicted on four counts of first-degree robbery and one count each of burglary, receiving stolen property, being a convicted felon in possession of a firearm, and being a persistent felony offender. Dorsey, along with a co-defendant, entered the victims' home and held the adult victim and two of her children at gunpoint while demanding money and jewelry. A third child was hiding in a closet and called the police. The police arrived and discovered Dorsey and the co-defendant still inside the house and in the process of restraining the victims with duct tape.

On October 5, 2010, Dorsey entered a guilty plea. The trial court engaged in a lengthy *Boykin* colloquy to ensure that Dorsey entered his plea knowingly, voluntarily, and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709 (1969). Notably, the trial court asked Dorsey if he had had enough time to talk with counsel and was satisfied with counsel's advice, to which he responded in the affirmative. The trial court also asked Dorsey if there was anything about the proceedings that he did not understand and whether he had any questions for the court or his counsel. Dorsey responded "no," and further stated that he was not coerced or threatened to enter a guilty plea. The trial court found Dorsey's plea was made knowingly, voluntarily, and intelligently.

Shortly after entering the guilty plea, Dorsey contacted counsel and requested that he file a motion asking the judge to change his sentence to provide for parole eligibility after he served 20 percent of the thirty-five-year

2

sentence. Counsel informed Dorsey that the judge did not have the authority to make such a change. Dorsey then informed counsel that he wanted to withdraw his plea based on this misunderstanding. Counsel filed the motion, which stated that at the time Dorsey entered his plea, he was under the impression that the trial judge had the authority to change his parole eligibility from 85 percent time served to 20 percent.

Dorsey's motion was scheduled for the October 25, 2010 motion hour. When Dorsey's case was called, counsel informed the trial court that it was Dorsey's motion to withdraw his plea and that it was against counsel's advice. Counsel also told the trial court that he felt an obligation to file the motion on Dorsey's behalf because it was what Dorsey wanted to do. Since Dorsey was not present at the motion hour, the trial judge informed counsel that he would hear what Dorsey had to say at sentencing on November 18, 2010.

At sentencing, the trial court addressed Dorsey's motion to withdraw his guilty plea, noting that the issue came down to whether the plea was knowingly and voluntarily entered. In response to the motion, the Commonwealth stated that it found it impossible to believe that parole eligibility did not come up in conversations between Dorsey and his counsel, given the extended discussions on plea offers between the Commonwealth and the defense. The Commonwealth also noted the overwhelming evidence against Dorsey, who, as noted, was apprehended in the victims' home.

The judge first asked Dorsey's counsel whether Dorsey was claiming ineffective assistance of counsel, to which counsel responded that the motion

3

was not made under RCr 11.42. Interrupting counsel's response, the judge stated that he was not referring to RCr 11.42 specifically, but that part of determining whether Dorsey could withdraw his plea involved whether or not he received ineffective assistance. Counsel stated that ineffective assistance was not part of the motion and that the reasoning behind the motion was simply that Dorsey did not understand the consequences of the plea. When the judge inquired about why Dorsey did not understand the consequences, defense counsel responded that he did not know, but that, as Dorsey's attorney, he could state his recollection of their conversations. Counsel suggested that the court could hear directly from Dorsey. The trial judge then indicated that he needed to hear from both, meaning Dorsey and counsel.

At that point, the trial judge placed Dorsey's counsel under oath and questioned him. Counsel stated his recollection was that he informed Dorsey that first-degree robbery is an 85 percent crime, *i.e.*, a defendant must serve 85 percent of his sentence before being parole eligible. According to counsel, Dorsey did not ask him whether the judge could change parole eligibility after the plea. The judge then asked counsel whether he gave Dorsey the impression that the judge could change parole eligibility and counsel stated that he gave no such impression. Counsel stated that his responses were based on his recollections, and that "we can certainly hear [Dorsey's] recollection as well." The trial judge then engaged in the following questioning with Dorsey before denying the motion:

Judge: You heard [counsel] say that he never told you that the judge could change the plea and make you eligible for

4

parole. Are you saying it's your understanding that you thought that the judge could reduce your 85 percent parole eligibility to 20 percent? Is that what your testimony is?

Dorsey: Yes sir.

Judge: What was that based on, Mr. Dorsey?

Dorsey: Just thought it was up to the judge.

Judge: To reduce the amount of the plea? Of the parole eligibility?

Dorsey: Yes sir.

Judge: Well now you heard [counsel] tell you that it was going to be 85 percent — did he — are you saying he didn't tell you that?

Dorsey: No, he told me.

Judge: Okay. Well why would you think the judge could reduce it?

Dorsey: You're the judge.

Judge: Is there any other reason you thought the judge could reduce it?

Dorsey: (No audible response by Dorsey)

Judge: Okay. Any other comments you wish to make, Mr. Dorsey, with respect to this?

Dorsey: No sir.

Judge: Alright...Do you remember when you went through the questions I asked you at the time of your guilty plea about whether you had enough time to talk to your attorney and whether you — uh — everything had been fully explained to you . . . remember I asked you those questions?

Dorsey: Yes sir.

Judge: Okay. Well, the court is going to find that the plea was voluntarily, knowingly, intelligently, voluntarily entered despite the fact that Mr. Dorsey now testifies that he had a different understanding, but there's no evidence that

5

he's been able to put forward for the basis for having a different understanding. The court is not going to allow withdrawal of the plea at this time; it's gonna find that it was knowingly, intelligently, voluntarily entered. And there is no indication that there was any ineffective assistance of counsel in the plea portion and no one is claiming that. So, Mr. Dorsey you're gonna be required to stick to your plea that you entered into at that time.

The trial court sentenced Dorsey to thirty-five years in prison as agreed to in the plea agreement.[1]

On July 30, 2012, Dorsey filed his *pro se* RCr 11.42 motion to alter, amend, or vacate the judgment, arguing: (1) the trial court should not have accepted his guilty plea without first holding a competency hearing; (2) counsel coerced him into a guilty plea that was not made knowingly, voluntarily, and intelligently; (3) he was denied counsel at a "critical stage of the proceedings" by "government intrusion into the attorney-client privilege"; (4) trial counsel was ineffective for failing to hire an independent psychiatrist to inquire about his competency; and (5) the dual representation by the public defender's office created a conflict of interest.

The Commonwealth's response stated that Dorsey had been evaluated by the Kentucky Correctional Psychiatric Center (KCPC) pursuant to a February 1, 2010 court order for a competency evaluation. The KCPC evaluation reflected that Dorsey was competent to stand trial, and Dorsey's counsel stipulated to

---

[1] As the Commonwealth noted in an earlier appearance in the case, Dorsey faced a potential 70-year sentence if he was convicted on all counts, the persistent felony offender charge having been dismissed due to Dorsey's age.

competency at a March 31, 2010 hearing. The Commonwealth also highlighted the extensive *Boykin* colloquy by the trial court before accepting the plea.

The trial court appointed the Department of Public Advocacy (DPA) to represent Dorsey on the RCr 11.42 motion. However, on April 22, 2013, the DPA sought to withdraw as counsel, stating that after reviewing the record, the DPA determined that the post-conviction proceeding ". . . is not a proceeding that a reasonable person with adequate means would be willing to bring at his or her own expense . . . ." Kentucky Revised Statute (KRS) 31.110(2)(c). The trial court denied the RCr 11.42 motion without a hearing, finding that Dorsey's allegations of ineffective assistance could be resolved based on the record.

Dorsey appealed to the Court of Appeals, which issued its first opinion affirming the trial court on October 9, 2015. This Court granted Dorsey's motion for discretionary review, but we ultimately remanded the case to the Court of Appeals for further consideration in light of *Commonwealth v. Tigue.* 459 S.W.3d 372 (Ky. 2015).[2]

On remand, the Court of Appeals determined that the first and third arguments outlined above were impermissibly brought under RCr 11.42 and therefore were properly dismissed by the trial court.[3] Additionally, Dorsey's

---

[2] The two Court of Appeals' opinions are largely identical, with the second opinion including an analysis of Dorsey's claims in light of *Tigue.* This opinion discusses both Court of Appeals' opinions.

[3] Dorsey's allegations that the trial court erred in failing to hold a competency hearing prior to accepting his guilty plea, and that he was denied counsel by "government intrusion into the attorney-client privilege" are allegations of errors committed by the trial court. RCr 11.42 does not authorize relief from judgment for

arguments that counsel failed to adequately investigate his competency and that a conflict arose from the public defender's dual representation of him and his co-defendant were clearly refuted by the record.[4] Therefore, most of the Court of Appeals' second opinion focused on Dorsey's claim of coercion. Focusing on the trial court's plea colloquy and the fact that Dorsey's motion to withdraw his plea made no allegations of coercion, the Court of Appeals again affirmed the trial court.

On discretionary review of the second appellate opinion, the only two issues before us are whether Dorsey's counsel had a conflict of interest with his client at the hearing on the motion to withdraw the plea and whether Dorsey was coerced to enter the plea. Having carefully reviewed the record, we conclude that it does not support either of Dorsey's arguments.

## ANALYSIS

### I.  Dorsey Was Not Denied Counsel During a Critical Stage of the Proceedings.

Dorsey argues that he was denied counsel at a critical stage of the proceedings — the motion to withdraw his guilty plea — because his counsel represented him while under a conflict of interest. Although there is no doubt that seeking to withdraw a guilty plea constitutes a critical stage in the

---

mere errors of the trial court; "[i]n order for the rule to be invoked there must be a violation of a constitutional right, a lack of jurisdiction, or such violation of statute as to make the judgment void and therefore subject to collateral attack." *Thompson v. Commonwealth*, 177 S.W.3d 782, 785 (Ky. 2005) (quoting *Tipton v. Commonwealth*, 376 S.W.2d 290 (Ky. 1963)).

[4] A waiver of dual representation pursuant to RCr 8.30(1) signed by "Fred Dorsey" on January 14, 2010, appears in the record.

proceedings, Dorsey did have competent representation during the hearing to withdraw his guilty plea and counsel was not placed at odds with representing Dorsey's interests, *i.e.*, he was not laboring under a conflict.

This Court has recently analyzed a defendant's right to conflict-free counsel when seeking to withdraw a guilty plea in both *Tigue* and *Zapata v. Commonwealth.* 516 S.W.3d 799 (Ky. 2017). Although this Court found clear conflicts of interest in both cases, the factual scenarios in *Tigue* and *Zapata* are plainly distinguishable from Dorsey's case.

In *Tigue*, soon after pleading guilty Tigue called his family and counsel to tell them he wanted to withdraw his plea. 459 S.W.3d at 380. In the following weeks, Tigue repeatedly attempted to contact counsel, but counsel never acknowledged his requests and did not file a motion to withdraw the plea on Tigue's behalf prior to sentencing. *Id.* During the sentencing hearing, Tigue orally asked the trial court to withdraw his plea, stating that his plea was false and involuntary. *Id.* at 381. Since there was no motion filed by counsel, Tigue proceeded *pro se* but failed to provide sufficient legal grounds for withdrawal of the plea. *Id.* The trial court denied the request. *Id.*

On appeal, this Court held that "Tigue's right to counsel was violated when his counsel refused to help him seek to withdraw his plea . . . ." *Id.* at 382. This important factor distinguishes *Tigue* from Dorsey's case. Unlike in *Tigue*, Dorsey's counsel filed the motion on his behalf. Counsel discussed the motion to withdraw the plea with Dorsey, prepared and filed it, and then participated in the hearing on the motion. Whereas Tigue was forced to

9

proceed *pro se,* Dorsey had counsel assisting him throughout the process. Although a "pre-judgment proceeding at which a defendant seeks to withdraw his guilty plea is a critical stage of the proceedings at which he is entitled to the assistance of counsel[,]" Dorsey, unlike Tigue, was not deprived of this constitutional right. *Id.*

Further, Tigue alleged that he was coerced and manipulated into making his guilty plea by his defense team because they refused to prepare a defense for him, thus forcing him to plead guilty. *Id.* at 387. At the hearing on his oral motion to withdraw his plea, Tigue claimed that he was threatened and that counsel "never showed any interest in defending [him]," which is an allegation of ineffective assistance. *Id.* This Court considered these hearing statements in tandem with letters Tigue and his family sent to the trial court containing details of alleged misconduct by counsel. *Id.* In Dorsey's case, it was the trial court, not Dorsey or his counsel, that introduced the idea of a potential ineffective assistance claim at the hearing to withdraw the plea. Further, Dorsey did not bring an ineffective assistance claim until after he was sentenced. Dorsey had full opportunity, both during the *Boykin* colloquy and during the hearing on his motion to withdraw the plea, to inform the court that he was coerced into his plea or that he received ineffective assistance, but he did not make either of those allegations. During the hearing on the motion, the trial court asked Dorsey if he had any other comments to make regarding his desire to withdraw the plea and he did not.

10

While this Court recognized in *Tigue* that a claim of coercion during a plea withdrawal hearing places counsel in a position where he has to defend himself or contradict his client in open court, this simply is not the case for Dorsey. *Id* at 387. In response to the trial court's questions, Tigue's counsel stated he believed the evidence in Tigue's case was "rather overwhelming" and that he discussed his recommendation to take the plea with Tigue and his family numerous times. *Id.* at 388. This Court held that in making these responses, counsel "put his own interests ahead of his client's by denying the truth of Tigue's allegations and thereby attacking his own client's credibility[,]" which created an actual conflict of interest. *Id.* Here, Dorsey's counsel did not put his own interests ahead of his client's and did not attack Dorsey's credibility. Dorsey was not accusing his attorney of making misrepresentations or neglecting to tell him critical information regarding the plea. Instead, as Dorsey informed the trial court, he was confused about the judge's role (more accurately, absence of a role) in parole eligibility. Dorsey's counsel testified that he always informed Dorsey that the crime he was pleading to is an 85 percent crime, and Dorsey agreed that was what he was told. Counsel did not create a conflict of interest through his answers to the court's questions; he appropriately presented the motion to withdraw as based on Dorsey's lack of understanding about the consequences of the plea.

While we do not agree with the trial court's decision to take sworn testimony from Dorsey's counsel, we fail to see a discernible conflict of interest. At the earlier October motion hour, Dorsey's counsel informed the trial court

11

that the motion to withdraw the plea was Dorsey's own motion and made against counsel's advice. During sentencing, after hearing preliminary remarks from counsel, the trial court could have just as easily started by questioning Dorsey about his motion and why he felt he should be permitted to withdraw his plea. Potentially, that questioning would have been sufficient to resolve the matter but, in any event, it was not necessary to place defense counsel under oath immediately and take testimony. The trial court should have first questioned counsel as an officer of the court, and counsel would have been required to answer truthfully under Supreme Court Rule 3.130(3.3), which requires candor toward the tribunal. If, as the proceeding evolved, the trial court believed there was a need for sworn testimony, the court could have taken testimony accordingly. The judge ultimately elicited the same testimony from Dorsey and counsel — that the motion was based on a misunderstanding as to the role of the trial court and not based on anything counsel did or did not tell Dorsey. Regardless of the trial court's unfortunate decision to elicit sworn testimony from counsel first, Dorsey's interests were not pitted against counsel's interests and therefore no conflict existed.

Dorsey's case is also distinguishable from *Zapata*. 516 S.W.3d at 799. In *Zapata*, the trial court granted Zapata's request to act as hybrid counsel. *Id.* at 800. Prior to trial, Zapata entered an *Alford* plea and the trial court conducted a proper *Boykin* colloquy. *Id.* Before sentencing, Zapata's counsel filed a motion to withdraw the plea, indicating that "undersigned counsel takes no position on this motion." *Id.* at 801. Zapata filed an additional motion to

12

withdraw his plea and requested an evidentiary hearing. *Id.* The trial court conducted a hearing but did not take sworn testimony or allow Zapata to present evidence. *Id.* Zapata argued that his plea was involuntary and that "counsel deceived him when she informed him he could withdraw his plea any time before sentencing with 'no problem . . . .'" *Id.*

This Court held that an actual conflict existed in Zapata's case and that Zapata was deprived of his right to counsel during this critical stage in the proceedings. *Id.* at 803. "Zapata's counsel was placed in the untenable position of defending her own interests which were adverse to her client's." *Id.* Similar to *Tigue*, "to argue in favor of her client's motion would require admitting serious ethical violations and possibly subject her to liability for malpractice; on the other hand, any contention by counsel that defendant's allegations were not true would . . . contradict her client." *Id.* As with *Tigue*, the facts in *Zapata* are distinguishable from the present case.

Zapata's motion to withdraw his plea was premised on his counsel's alleged deception, and his counsel readily acknowledged that Zapata's allegations against her "put her in an awkward position." *Id.* at 801. Zapata claimed ineffective assistance, whereas Dorsey claimed a misunderstanding which he never attributed to his counsel. Dorsey, moreover, provided no basis for his misunderstanding and admitted, under oath, that counsel told him, accurately, the crime was an 85 percent crime.

Counsel was not placed at odds with his client in representing Dorsey on his motion to withdraw the plea because the motion was based entirely on

13

Dorsey's own misunderstanding of the trial court's role in determining parole eligibility. Again, Dorsey did not make allegations that counsel failed to explain the 85 percent parole eligibility requirement; he merely stated that he thought the judge could change the requirement. When asked by the court, counsel stated that Dorsey never asked him if the trial judge had the authority to reduce the minimum amount of time served and there was no discussion of that "possibility." Dorsey offered no basis for his belief. Given that Dorsey's reason for wanting to withdraw his plea was a simple misunderstanding, counsel advocated for Dorsey's position as effectively as he could by communicating this position to the trial court. Simply put, counsel offered all the assistance he could to help Dorsey accomplish his objective and he was never at odds with Dorsey on the motion to withdraw the plea.

Unlike *Zapata*, Dorsey's counsel was not placed in a situation where he had to defend his client while also serving as a witness on behalf of the plea that he negotiated. Counsel never had to defend his advice to Dorsey or potentially admit to ethical violations. No conflict of interest arose in these circumstances.

To succeed on an ineffective assistance claim, a defendant must show: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Tigue*, this Court held that "some circumstances are so inherently prejudicial that they give rise to a *per se* violation of the right to counsel without the need to prove actual prejudice." 459 S.W.3d at 384. In

14

this case, Dorsey did not experience a violation of his right to counsel, and certainly not a *per se* violation, because his counsel did not have any personal adverse interests at the time Dorsey sought to withdraw the plea.

## II. There Is No Evidence that Dorsey's Counsel Coerced Him into Accepting the Guilty Plea.

In support of his claim of coercion in his subsequent RCr 11.42 motion, Dorsey stated that counsel was aware that he is "not smart," has a low IQ, and was found to be mildly mentally retarded "on more than one occasion." He then stated that counsel had Dorsey's mother come into the attorney room on the morning of trial and that she and counsel together "virtually twisted Dorsey's arm" and forced him to plead guilty. However, Dorsey's testimony during the *Boykin* colloquy refutes any allegations of coercion.

During the plea hearing, Dorsey affirmed that he had enough time to talk to his attorney, was satisfied with the advice given, and that he was not under any coercion or threats that induced him to plead guilty — he was pleading guilty of his own free will. Further, the trial court asked Dorsey if there was anything about the proceedings he did not understand, and he replied "no." Dorsey also said he did not have any questions for the court or counsel. These "[s]olemn declarations in open court carry a strong presumption of verity." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 569 (Ky. 2006).

It was not until after sentencing that Dorsey alleged coercion, insisting that counsel got his mother to visit him on the morning of trial to pressure him to accept the plea deal. However, strong encouragement by family members does not rise to the level of coercion. "Advice even strong urging by those who

15

have an accused's welfare at heart . . . does not constitute undue coercion." *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976). *See also Iaea v. Sunn*, 800 F.2d 86, 867 (9th Cir. 1986) ("Mere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion."); *United States ex rel. Brown v. Lavellee*, 424 F.2d. 457 (2d Cir. 1970) (No coercion where defendant's mother made him consider the effects that a conviction would have on his family; while the statements may have been coercive coming from a judge or prosecutor, coming from defendant's lawyers and mother the statements were sound advice.). While familial pressure may influence a defendant's decision to plead guilty, "this pressure does not imply undue coercion such that the plea was involuntary." *United States v. White*, 610 Fed. Appx. 579, 582 (8th Cir. 2015). Dorsey's mother may have encouraged Dorsey to accept the plea deal, but her influence does not constitute coercion.

As noted, the Commonwealth had strong evidence against Dorsey given that police officers caught him during his commission of the crime, and extensive plea negotiations preceded Dorsey's plea. The record simply does not suggest that Dorsey was coerced into accepting the plea, and Dorsey has not provided any persuasive basis for his allegation.

## CONCLUSION

Although the trial court mishandled the hearing on Dorsey's motion to withdraw his plea by quickly placing counsel under oath and hearing sworn testimony, the elicited information was ultimately the same information

16

provided by Dorsey himself and did not contradict Dorsey's sole contention that he misunderstood the role of the trial judge. The trial court could have reached the same result by questioning Dorsey first, since the trial court knew it was Dorsey's own motion and against counsel's advice. Regardless, no conflict of interest occurred between Dorsey and his counsel at the hearing on the motion. Moreover, on the RCr 11.42 allegations, the record does not support Dorsey's claim that he was coerced into entering a guilty plea. For the foregoing reasons, we affirm the Court of Appeals.

All sitting. Minton, C.J.; Cunningham, Keller, and VanMeter, JJ., concur. Wright, J., dissents by separate opinion, which Venters, J., joins.

WRIGHT, J., DISSENTING: The Sixth Amendment provides that a criminal defendant shall have the right to the "Assistance of Counsel for his defence." U.S. Const. amend. VI. This right includes "the right to effective assistance of counsel," *Strickland v. Washington,* 466 U.S. 668, 686 (1984), and effective assistance "includes the right to representation free from conflicts of interest." *Rubin v. Gee,* 292 F.3d 396, 401 (4th Cir. 2002) (*citing Cuyler v. Sullivan,* 446 U.S. 335, 348–50 (1980); *Wood v. Georgia,* 450 U.S. 261, 271 (1981)). Section 11 of the Kentucky Constitution also addresses this issue, stating: "[i]n all criminal prosecutions the accused has the right to be heard by himself and counsel . . . ."

As the Supreme Court of the United States noted in *Gideon v. Wainwright,* "[t]he right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in

17

ours." 372 U.S. 335, 344 (1963). Today, the majority strips this fundamental right from Dorsey at what this Court has deemed a critical stage of his trial. *Commonwealth v. Tigue*, 459 S.W.3d 372, 382 (Ky. 2015) ("[A] pre-judgment proceeding at which a defendant seeks to withdraw his guilty plea is a critical stage of the proceedings at which he is entitled to the assistance of counsel.").

The majority makes much ado about the fact that "counsel offered all the assistance he could to help Dorsey accomplish his objective." While I agree that counsel offered Dorsey "all the assistance he could," I do not believe this assistance was adequate. Clearly, while Dorsey's counsel was on the stand giving testimony, it left his client without representation. What the trial judge elicited during his questioning of counsel is immaterial to the violation of Dorsey's fundamental right to counsel at this critical stage of trial. We have no idea what may have come to light had Dorsey been represented during his attorney's testimony.

The United States Supreme Court set out the requirements for an accused to represent himself at trial in *Faretta v. California*, 422 U.S. 806, 835 (1975) ("In order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits . . . . Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (internal citations and quotation marks omitted)). Here, Dorsey never

18

asked to represent himself—and the trial court conducted no such *Faretta* colloquy to determine if he was competent to do so. Yet, it left him wholly without counsel at a critical stage of trial.

Denying a defendant representation at a critical stage of trial (such as happened here) results in structural error and cannot be deemed harmless. As this Court recently explained,

> the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.' For the same reason, a structural error 'def[ies] analysis by harmless error standards.'"
> *Weaver v. Massachusetts*, —— U.S. ——, 137 S.Ct. 1899, 1907-08, 198 L.Ed.2d 420 (2017) (internal citations omitted).

*Commonwealth v. Douglas*, 553 S.W.3d 795, 799-800 (Ky. 2018). Therefore, "[s]tructural defects in the constitution of the trial mechanism require automatic reversal." *King v. Commonwealth*, 374 S.W.3d 281, 295 (Ky. 2012) (internal brackets, citations, and quotation marks omitted). Thus, to the nature of the error, and regardless of the brevity of Dorsey's counsel's testimony, this error requires reversal.

As the United States Supreme Court stated in *Gideon*:

> From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in *Powell v. Alabama*:

> 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill

19

in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.' 287 U.S., at 68-69.

372 U.S. 335, 344-45 (1963).

Here, Dorsey's right to be heard was rendered "of little avail" when he was denied the right to have conflict-free counsel during his attorney's testimony at a critical stage of his trial. Dorsey lacked "both the skill and knowledge adequately" to elicit testimony from either his attorney or himself at his plea withdrawal hearing. Therefore, I strongly dissent from the majority's affirmance of the Court of Appeals.

Venters, J., joins.

20

APPELLANT:

Frederick Dorsey, *Pro se*
Eastern Kentucky Correctional
Complex


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Kenneth Wayne Riggs
Mark Barry
Taylor Allen Payne
Assistant Attorneys General
Office of Criminal Appeals