RENDERED: JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0608-MR

VICTOR MARRERO-CHARLEMAN                        APPELLANT

                  APPEAL FROM KENTON CIRCUIT COURT
v.           HONORABLE PATRICIA M. SUMME, JUDGE
                       ACTION NO. 18-CR-01172

COMMONWEALTH OF KENTUCKY                     APPELLEE

AND

NO. 2020-CA-0763-MR

VICTOR MARRERO-CHARLEMAN                        APPELLANT

                  APPEAL FROM KENTON CIRCUIT COURT
v.           HONORABLE GREGORY M. BARTLETT, JUDGE
                       ACTION NO. 18-CR-00749

COMMONWEALTH OF KENTUCKY                     APPELLEE

AND

NO. 2020-CA-0765-MR

VICTOR MARRERO-CHARLEMAN                                    APPELLANT


                    APPEAL FROM KENTON CIRCUIT COURT
v.                 HONORABLE GREGORY M. BARTLETT, JUDGE
                        ACTION NO. 16-CR-01147


COMMONWEALTH OF KENTUCKY                                     APPELLEE


                                OPINION
                               AFFIRMING

                          ** ** ** ** **

BEFORE:  LAMBERT, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE:  Victor Marrero-Charleman[1] appeals from the denial of his

motion to withdraw his guilty plea in three circuit court cases.  After examining the

record and applicable law, we affirm.

                    ***Relevant Factual and Procedural History***

          In December 2016, Marrero was indicted for tampering with physical

evidence.  Kenton Circuit Court Case No. 16-CR-01147.  That case was assigned

to  Judge Gregory Bartlett.  In December 2017, Marrero and the Commonwealth

---

[1] We will refer to the Appellant as "Marrero" as that is the lone surname he used when signing
documents in circuit court.

-2-

entered into a plea agreement, pursuant to which he was to receive pretrial diversion. The court accepted the guilty plea and released Marrero on his own recognizance pending sentencing.[2] But when Marrero failed to appear for sentencing he was indicted for first-degree bail jumping. Kenton Circuit Court Case No. 18-CR-00749. That case also was assigned to Judge Bartlett.

While those charges were pending, in September 2018, Marrero was indicted for two counts of robbery in the first degree and one count of tampering with physical evidence. Kenton Circuit Court Case No. 18-CR-01172. That case was assigned to Judge Patricia Summe.

Thus, though Marrero had the same attorney in all three cases, the charges proceeded along separate tracks in separate courtrooms until July 2019, when he entered into a package, comprehensive plea agreement with the Commonwealth. The agreement recommended that Marrero receive a total sentence of eighteen years (ten total years for the charges before Judge Summe, consecutive to eight total years for the charges before Judge Bartlett). Judge Bartlett and Judge Summe held separate guilty plea hearings, after which each accepted Marrero's guilty plea.

---

[2] "When a defendant is granted pretrial diversion on a felony conviction, a sentence for that conviction is not imposed, if ever, unless and until the pretrial diversion agreement is voided." *Commonwealth v. Derringer*, 386 S.W.3d 123, 126 (Ky. 2012). Thus, though styled a "sentencing," presumably the proceeding was meant to allow the court to approve Marrero being placed on pretrial diversion.

However, before he was sentenced by either judge, Marrero indicated he wished to withdraw his guilty pleas. In November 2019, via conflict counsel, Marrero filed a written motion to withdraw his guilty plea in all three cases. The gist of his motion was an assertion that his plea was involuntary because his appointed counsel, Ashley Graham, had not communicated adequately, provided adequate discovery, or filed motions Marrero wished her to file.

In January 2020, Judge Summe held a thorough, roughly three-hour-long hearing on Marrero's motion to withdraw his guilty plea at which facts and circumstances pertaining to the charges pending before both Judge Summe and Judge Bartlett were discussed. Marrero testified that Graham had not provided him with sufficient paper discovery. Instead, she provided him with DVDs which supposedly contained discovery, but he could not get most of them to play on the jail's equipment. He also testified that Graham had not met often with him and had not filed motions he requested, such as a motion to suppress.

Graham also testified. She admitted she had not given Marrero all of the "paper" discovery, such as thousands of pages from Facebook. But she testified that she had provided him DVDs containing discovery to view at the jail and she believed those discs were functional. She also testified that Marrero had refused to meet with her at least once when she went to the jail to go over the

discovery with him. According to Graham, she did not file the motions Marrero requested because she did not believe there were proper grounds to do so.

A little over two months later, Judge Summe issued a meticulous order denying Marrero's motion to withdraw his guilty plea as to the charges pending in her courtroom. The gist of Judge Summe's order was that Graham was more credible than Marrero, that Marrero had not shown his plea was involuntary, and that the court did not believe it appropriate to let him withdraw his voluntary plea. Soon thereafter, Judge Summe sentenced Marrero, via video, in accordance with the sentence called for in the plea agreement. Marrero appealed. Case No. 2020-CA-0608-MR (for Kenton Circuit Court Case No. 18-CR-01172).

Meanwhile, the motion to withdraw the guilty plea in the cases pending before Judge Bartlett proceeded differently. Judge Bartlett held a very brief, non-evidentiary hearing on Marrero's motion to withdraw his guilty plea on March 9, 2020 – after Judge Summe had held her evidentiary hearing but before her written decision was issued. However, when Judge Bartlett held his hearing everyone was aware that Judge Summe was likely to deny Marrero's motion to withdraw because she had indicated as much at a status hearing in February 2020.

At the hearing, Marrero's counsel reminded Judge Bartlett that she and the Commonwealth had asked him via email to view Judge Summe's hearing

instead of conducting his own,[3] and Judge Bartlett indicated he had granted their request and had watched Judge Summe's hearing. Judge Bartlett orally denied Marrero's motion to withdraw his plea, stating "based upon that [his viewing of Judge Summe's hearing] and my own record in these cases, the motion to withdraw plea will be denied in each case." Video Record, 3/9/20 at 3:26:34 *et seq.*

Marrero's counsel soon thereafter asked Judge Bartlett if he intended to issue a written order, and Judge Bartlett responded, "Well, if you need one, yes." *Id.* at 3:26:54 *et seq.* Counsel then vaguely said, "I'm going to presume the answer to that question is yes, unless you were joining Judge Summe's findings, which I know you haven't seen yet because she's not finished with hers yet." *Id.* at 3:26:59 *et seq.* Judge Bartlett eventually responded, "If you want some brief written order, it'll be entered." *Id.* at 3:27:11 *et seq.* Marrero's counsel requested nothing else.

_____

[3] A trial court should hold an evidentiary hearing before resolving a non-frivolous motion to withdraw an allegedly involuntary guilty plea. *See, e.g.*, *Zapata v. Commonwealth*, 516 S.W.3d 799, 801 (Ky. 2017). But the Kenton Circuit Court, via Judge Summe, conducted a detailed hearing on Marrero's motion to withdraw and Marrero has pointed to no additional information he wished to present. Indeed, it is difficult to discern what practical purpose a redundant hearing before Judge Bartlett would have served. Moreover, a party generally cannot receive appellate relief for an act a trial court performed at the party's request, *Tackett v. Commonwealth*, 445 S.W.3d 20, 29 (Ky. 2014), which is what occurred here. In short, we strongly disagree that Judge Bartlett somehow erred by not conducting his own hearing.

Despite his statement, Judge Bartlett did not issue a written order denying Marrero's motion to withdraw his guilty plea before sentencing Marrero, via video, in accordance with the plea agreement in May 2020. Marrero appealed. Case Nos. 2020-CA-0763-MR (for Kenton Circuit Court Case No. 18-CR-00749) and 2020-CA-0765-MR (for Kenton Circuit Court Case No. 16-CR-01147). We ordered the three appeals to be consolidated and resolve them all in this combined Opinion.

*Analysis*

Marrero's main argument is that both judges erred in denying his motion to withdraw his guilty plea. He also raises a fatally underdeveloped argument that Judge Bartlett failed to make adequate findings. Finally, Marrero argues that both judges erred in sentencing him via video conference. For judicial convenience, we will address Marrero's arguments in a different order than he presents them to us.[4]

*No Error in Sentencing Via Video*

We begin with Marrero's argument that it was improper to sentence him via videoconference. We disagree.

---

[4] We have carefully considered the parties' briefs but have concluded any arguments in them which are not discussed in this Opinion are irrelevant, redundant, or otherwise without merit.

When Marrero was sentenced, the COVID-19 pandemic had begun. No vaccines were available. Thus, our Supreme Court issued various administrative orders to help courts remain open as necessary while trying to best ensure the safety of court personnel, attorneys, and litigants. For example, Section 1 of Order 2020-13 cancelled all dockets, with some limited exceptions, from March 16, 2020 through April 24, 2020. https://kycourts.gov/Courts/Supreme-Court/Supreme%20Court%20Orders/202013.pdf (last visited Apr. 26, 2022). Similarly, Order 2020-16 cancelled most dockets and closed judicial facilities to in-person services during April 2020. https://kycourts.gov/Courts/Supreme-Court/Supreme%20Court%20Orders/202016.pdf (last visited Apr. 26, 2022). As had Order 2020-13, Order 2020-16 also stated in Section 1 that "Judges must use available telephonic and video technology to conduct all hearings, unless the parties are unable to participate remotely." *Id.* Those were the dire circumstances present when Marrero was sentenced via video.

Of course, in a perfect world, sentencings should be done face-to-face. But the world was decidedly imperfect when Marrero was sentenced. Under the circumstances here, neither Judge Bartlett nor Judge Summe erred by following Kentucky's highest court's mandate for trial courts to conduct proceedings remotely to the greatest extent possible.

Moreover, Marrero points to absolutely no concrete prejudice he suffered from being sentenced via video. For example, there were no technical difficulties which prevented any participant from hearing or seeing any other participant. Thus, these cases are materially distinguishable from *K.D.H. v. Cabinet for Health and Family Services*, 630 S.W.3d 729, 740-41 (Ky. App. 2021), in which we held that, despite the pandemic, it was improper to continue to conduct a hearing via video when technical difficulties led to the court being unable to hear testimony.

Nonetheless, Marrero broadly contends he "had both a procedural and constitutional right to be personally present at all critical stages of his case." Appellant's brief, p. 16. For his procedural argument, Marrero cites Kentucky Rule of Criminal Procedure (RCr) 8.28(1), which provides in relevant part that "[t]he defendant shall be present at the arraignment, at every critical stage of the trial including . . . the imposition of the sentence." For his constitutional argument, Marrero cites *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 332, 78 L. Ed. 674 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964), in which the United States Supreme Court "assume[d]" that "in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his

own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."

Of course, *Snyder* is distinguishable as it was rendered long before technology permitted court proceedings to be reliably conducted via video. As *Maryland v. Craig* makes clear, the Confrontation Clause does not provide an "*absolute* right to a face-to-face meeting[.]"  497 U.S. 836, 844, 110 S. Ct. 3157, 3163, 111 L. Ed. 2d 666 (1990).  In *Craig*, the Supreme Court held that the right to confront witnesses did not always have to be satisfied by a physical and face-to-face confrontation when "denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S. Ct. at 3166 (citations omitted).  In *Commonwealth v. Willis*, our Supreme Court noted that the United States Supreme Court had held that "the right to confront . . . is not absolute and may in appropriate cases be compromised to accommodate other legitimate interests in the criminal trial process."  716 S.W.2d 224, 228 (Ky. 1986) (citing *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 1045, 35 L. Ed. 2d 297 (1973)).[5]

---

[5] Marrero's core arguments were also recently rejected by our Supreme Court, albeit in an unpublished opinion. *See Gibson v. Commonwealth*, No. 2020-SC-0250-MR, 2021 WL 3828558 (Ky. Aug. 26, 2021).  We believe it is directly on point and persuasive. *See also Pouncy-Allen v. Commonwealth*, No. 2020-CA-0717-MR, 2021 WL 2172937, at *3 (Ky. App. May 28, 2021) ("Pouncy-Allen was present at his sentencing hearing – albeit by means of Zoom.  The cases upon which he relies are distinguishable and were decided long before we were faced with the unprecedented context of a pandemic.  Indeed, some of the cases that he has cited were decided long before the advent of video-conferencing technology.  Pouncy-Allen has failed to

Thus, we reject Marrero's argument that it was improper to sentence him via video.

*No Remand for Additional Findings Required*

We also reject Marrero's fatally terse argument that he is entitled to relief due to Judge Bartlett's failure to make extensive findings. In his main brief, Marrero's entire argument on this point is only a two-sentences-long paragraph devoid of citations to the record or any authority. And Marrero's reply brief does not remedy the problem as it cites only one distinguishable case, *Clark v. Commonwealth*, 608 S.W.3d 175 (Ky. App. 2020). *Clark* generally highlights the importance of a trial court's findings in the appellate process, but it is materially distinguishable since it does not involve a motion to withdraw a guilty plea. In fact, it involved a trial court's complete failure to analyze a speedy trial claim under binding United States Supreme Court precedent. *Id.* at 178-81. No such similar circumstances exist here.

Precedent makes plain that "a terse, conclusory assertion wholly unaccompanied by meaningfully developed argument or citation to authority is insufficient to merit appellate relief." *Schell v. Young*, 640 S.W.3d 24, 32 (Ky. App. 2021), *discretionary review denied* (Mar. 16, 2022). *Accord Harris v.*

_____

demonstrate that being present remotely prevented him from exercising any right that he could have exercised in person.").

-11-

*Commonwealth*, 384 S.W.3d 117, 131 (Ky. 2012). Consequently, Marrero's argument regarding Judge Bartlett's findings is insufficient to warrant appellate relief.

Finally, it is beyond serious dispute that Judge Summe issued sufficient findings. Although Judge Bartlett did not formally adopt Judge Summe's findings, he remarked that he had observed the hearing she conducted and stated his denial of Marrero's motion was, at least in part, "based upon" that hearing. In other words, the Kenton Circuit Court, as a whole, held a hearing and issued findings. *Cf. Herring v. Moore*, 561 S.W.2d 95, 98 (Ky. App. 1977) ("The court is an entity, not a person . . . ."). What common sense purpose would be served by remanding two of these cases for findings when another judge facing *the exact same motion from the exact same defendant* has already made them?

In conclusion, we generally agree with Marrero that it is preferable for a court to make findings when resolving a motion to withdraw a guilty plea. But, under the unique facts of this case, we perceive no prejudicial errors. Instead, Marrero has shown, at most, a harmless error. *See* RCr 9.24.

*No Error in Denial of Motion to Withdraw*

Having cleared the considerable procedural underbrush, we now turn to addressing on the merits whether the Kenton Circuit Court abused its discretion in denying Marrero's motion to withdraw his plea. The answer is no.

-12-

RCr 8.10 provides in relevant part that "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." Trial courts have discretion to allow withdrawal of voluntarily made guilty pleas, so we generally review a trial court's decision to deny such motions for abuse of discretion. *Blanton v. Commonwealth*, 516 S.W.3d 352, 356 (Ky. App. 2017). A decision is an abuse of discretion if it is arbitrary, unreasonable, unfair, or not supported by sound legal principles. *Sturgill v. Commonwealth*, 533 S.W.3d 204, 208 (Ky. App. 2017).

However, if a trial court determines that a guilty plea was involuntary, "the motion to withdraw it must be granted." *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002). We review a trial court's decision as to whether a plea was involuntary under the clearly erroneous standard, which focuses on whether the trial court's decision is supported by substantial evidence. *Sturgill*, 533 S.W.3d at 208.[6] Our Supreme Court has expressed the many factors to consider when determining whether a guilty plea was involuntary as follows:

> In cases where the defendant disputes his or her
> voluntariness, a proper exercise of this discretion requires
> trial courts to consider the totality of the circumstances
> surrounding the guilty plea and juxtapose the

---

[6] Our Supreme Court has alternately held that appellate courts "review[] a trial court's ruling on a defendant's motion to withdraw his guilty plea only for abuse of discretion by ascertain[ing] whether the court below acted erroneously in denying that appellant's pleas were made involuntarily." *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001) (internal quotation marks and citation omitted). Regardless of the standard of review utilized, Marrero is not entitled to relief.

-13-

presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington*[, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] inquiry into the performance of counsel:

> A showing that counsel's assistance was ineffective in enabling a defendant to intelligently weigh his legal alternatives in deciding to plead guilty has two components: (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

> Evaluating the totality of the circumstances surrounding the guilty plea is an inherently factual inquiry which requires consideration of the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made. While [s]olemn declarations in open court carry a strong presumption of verity, the validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken[.] The trial court's inquiry into allegations of ineffective assistance of counsel requires the court to determine whether counsel's performance was below professional standards and caused the defendant to lose what he otherwise would probably have won and whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory. Because [a] multitude of events occur in the course of a criminal proceeding which might influence a defendant to plead guilty or stand trial, the trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea.

Because of the factual determinations inherent in this evaluation, Kentucky appellate courts have recognized that the trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty at the time of the guilty plea and in a superior position to judge [witnesses'] credibility and the weight to be given their testimony at an evidentiary hearing. Accordingly, this Court reviews a trial court's ruling on a defendant's motion to withdraw his guilty plea only for abuse of discretion by ascertain[ing] whether the court below acted erroneously in denying that appellant's pleas were made involuntarily.

*Bronk*, 58 S.W.3d at 486-87 (internal quotation marks, footnotes, and citations omitted).

Marrero's main complaint was that he was unable to view discovery provided to him by counsel. But Marrero's alleged inability to view discovery was already known to him when he pleaded guilty, yet he did not timely inform either judge of his concerns. And Graham testified that she believed the DVDs she provided to Marrero worked and had reviewed the paper discovery with Marrero, or at least had attempted to do so.

The trial court gave more credence to Graham than Marrero. We cannot disturb that credibility determination. *See, e.g.*, *Bhattacharya v. Commonwealth*, 292 S.W.3d 901, 904 (Ky. App. 2009). Also, Marrero passed up at least one opportunity to review discovery with Graham, which significantly undercuts his claims that he somehow was forced to plead guilty because he was

-15-

not sure of the evidence against him. In sum, Marrero has not shown that counsel's performance regarding discovery was deficient or how any deficiency caused him to plead guilty instead of going to trial.

A similar conclusion applies to Marrero's claim that his guilty plea was not voluntary because Graham declined to file motions, such as a motion to suppress. "An attorney cannot be ineffective for failing to raise a non-meritorious claim." *Williams v. Commonwealth*, 336 S.W.3d 42, 47 (Ky. 2011). Graham testified that she had researched the issues Marrero wished her to raise, such as his alleged intoxication at the time of his confession, but had concluded there was no proper basis upon which to seek relief. The trial court was permitted to find Graham more believable than Marrero.

Moreover, filing unsuccessful motions would have been fruitless endeavors which would not have favorably impacted these cases, so it is incumbent upon Marrero to show that the motions he wished Graham to file would have been successful. He has not done so. In short, Marrero has not shown that the trial court erred by denying his motion to withdraw based upon counsel's failure to file requested motions.

Finally, Marrero has not shown an entitlement to withdraw his plea based upon counsel's actions or inactions during the plea negotiation process. Marrero testified at the hearing that he had told Graham all along that he did not

want to plead guilty but had taken the plea offer because he did not think Graham would fight for him. Marrero claimed Graham would have lost his cases on purpose, so he was forced to take the plea offer. Again, however, Judge Summe found Marrero to have generally poor credibility and there is nothing except Marrero's self-serving testimony to show that Graham would have lost on purpose if the cases had gone to trial.

By contrast, Graham testified that Marrero asked her repeatedly to try to get a better plea offer from the Commonwealth. In fact, it is uncontested that Marrero went so far as to take the highly unusual step of speaking to the Commonwealth directly to try to get a lower sentence. Yet, inexplicably, Marrero testified that he was not truly interested in reaching a deal but only wanted to see if the Commonwealth would make what Marrero deemed a fair plea offer.

Marrero has not shown that his counsel made serious errors during the plea process nor that he would have insisted upon going to trial, but for counsel's allegedly deficient performance. Marrero was personally involved in the plea negotiation process and ultimately obtained a favorable offer. Other than his own self-serving speculation, Marrero has not shown any improper or prejudicial actions or inactions by his counsel during the plea negotiation process. In fact, Marrero told Judge Summe and Judge Bartlett when he pled guilty that he was satisfied with his counsel's representation. Such representations "carry a strong

presumption of verity." *Dorsey v. Commonwealth*, 565 S.W.3d 569, 577 (Ky. 2018) (internal quotation marks and citation omitted).

In sum, considering all of the unique facts and circumstances of this case, we discern no error in the circuit court's conclusion that Marrero's plea was voluntary. Likewise, we perceive no clear error or abuse of discretion in the trial court's refusal of Marrero's motion to withdraw his voluntarily made guilty plea. The trial court's decision is supported by substantial evidence and is not arbitrary, unfair, or unsupported by sound legal principles.

### *Conclusion*

For the foregoing reasons, the Kenton Circuit Court is affirmed in all three cases.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky