**Edward Joseph MITCHELL, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**Edward Jefferson Mitchell, Sr., Appellant,**

v.

**Commonwealth of Kentucky, Appellee.**

Nos. 2007–CA–002241–MR, 2007–CA–002260–MR.

Court of Appeals of Kentucky.

March 5, 2010.

Discretionary Review Denied by Supreme Court Nov. 10, 2010.

---

David S. Mejia (argued for Edward Joseph Mitchell, Sr.), Louisville, KY, on brief for appellants.

Darren C. Wolff, Louisville, KY, argued for Edward Joseph Mitchell, Jr.

Jack Conway, Attorney General, Christian K.R. Miller (argued), Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, KELLER, and LAMBERT, Judges.

*OPINION*

KELLER, Judge.

Edward Jefferson Mitchell and Edward Joseph Mitchell (the Appellants)[1] appeal from an Opinion and Order of the Jefferson Circuit Court denying their motions for post-conviction relief pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42, following an evidentiary hearing. For the reasons stated below, we reverse and remand.

## FACTS

The Appellants were arrested and charged with one count of robbery in the first degree and one count of assault in the first degree in Indictment No. 04–CR–0457. After being arrested, Son confessed to committing the crimes and indicated that he committed the offenses at the urging and planning of Father. Specifically, Son made the following statements to the police.

On December 19, 2003, Son agreed, at Father's urging, to go inside Collett Auto Sales and rob Robert Collett (Collett). On that same day, Father gave Son a BB gun that he cut off in order to make it look like a small rifle. Father also bought a mask and sunglasses so that Collett would not recognize Son. Prior to entering Collett Auto Sales, Son waited one or two streets away until Father called him to tell him it was time to go into Collett Auto Sales. When Son went inside, he asked Collett for his money. Instead of giving Son the

money, Collett pulled out a gun, which Son immediately knocked out of Collett's hands. Collett then began to choke Son and knocked Son to the floor. While on the ground, Son grabbed something off the floor and hit Collett in the head. Son then took Collett's wallet, ring, necklace, watch, and gun and ran back to Father's car. Thereafter, Father took Son to his grandmother's house and told Son to take off his clothes and get in the shower. Father then took Son's clothes, which was the last time Son saw the clothes he was wearing that day. Additionally, Father took Collett's ring and wallet and left Son with the gun, watch, and necklace.

Although Son made the above-mentioned confession to the police, Father at all times denied that he was involved. Rob Guarnieri (Guarnieri) was appointed to represent Father, while Carolyn McMeans (McMeans) was appointed to represent Son. Both attorneys were employed by the Jefferson County Public Defender's Office. At the January 16, 2004, probable cause hearing held in Jefferson District Court, Guarnieri and McMeans filed a waiver of dual representation form on behalf of each of the Appellants. At the Appellants' arraignment on February 16, 2004, in Jefferson Circuit Court, Guarnieri and McMeans again filed a waiver of dual representation form on behalf of each of the Appellants.

Subsequently, Son filed a motion to suppress the statement he made to the investigating police officers on the ground that it had been coerced. The trial court held a suppression hearing on December 17, 2004, and entered an order denying son's motion. On January 27, 2005, Son filed a motion for a separate trial. Because Son ultimately pled guilty, it appears from the

---

1. Due to the similarity in the Appellants' names, we will refer to Edward Jefferson Mitchell as "Father" and Edward Joseph Mitchell as "Son".

record that the trial court never ruled on Son's motion for a separate trial.

On February 15, 2005, Son entered a guilty plea to one count of robbery in the second degree and one count of assault in the second degree pursuant to a negotiated, written plea agreement. A condition of the guilty plea agreement required Son to testify, consistent with his post-arrest statement, against Father. Son was sentenced to ten-years' imprisonment on each count, with the terms to be served consecutively. Thereafter, Father entered a plea of guilty on April 14, 2005, to one count of robbery in the second degree and to one count of assault in the second degree. Father was sentenced to six-years' imprisonment on each count, with the sentences to run concurrently but to be served consecutively with a previous five-year sentence.

On February 7, 2007, through retained and separate counsel, the Appellants filed RCr 11.42 motions alleging that they received ineffective assistance of counsel because they were both represented by attorneys from the Jefferson County Public Defender's Office. An evidentiary hearing on the Appellants' motions was held on September 10, 2007.

Both Appellants testified in support of their motions at the evidentiary hearing. Both Father and Son verified their signatures on the waiver of dual representation forms. However, Father stated that he did not have any conversations or discussion with his attorney regarding the implications of the waivers. He stated that it was his understanding that he simply needed to sign them in order to have representation through the Jefferson County Public Defender's Office. He stated that he was unaware of any potential conflict and did not know that he could have another attorney. Son stated that he did not recall signing the forms. Additionally, Son stated that he did not have a discussion with McMeans regarding his right to have counsel outside of the Jefferson County Public Defender's Office.

On October 3, 2007, the trial court entered an Opinion and Order denying the Appellants' motions.[2] This appeal followed.

## STANDARD OF REVIEW

■ Because the Appellants' claims of ineffective assistance of counsel are based upon a conflict of interest, a different standard is used than the general standard applicable to a typical ineffectiveness claim. The United States Supreme Court set forth the standard for reviewing conflict of interest cases in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and summarized it again in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as follows:

In *Cuyler* . . . the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on

2. The Opinion and Order entered by the trial court on October 3, 2007, not only references the Appellants' 04–CR–0457 convictions but also the Appellants' 03–CR–3119 convictions. However, neither the Appellants nor the Commonwealth address the 03–CR–3119 convictions in the arguments contained in their briefs. Having reviewed the record, including the Appellants' notices of appeal, we find no evidence that the 03–CR–3119 convictions are being contested at this time. Accordingly, we conclude that the Appellants are precluded from appealing issues not addressed in their brief to this Court. Therefore, we will address only the portion of the trial court's Opinion and Order pertaining to the Appellants' 04–CR–0457 convictions.

the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts ... it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. *Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."*

(Emphasis added). Thus, we must determine whether trial counsel actually represented conflicting interests, and if so, whether the conflict adversely affected trial counsel's performance.

■ However, when a movant has pled guilty, this test is slightly modified. "[I]n order to successfully assert a claim of ineffective counsel based on a conflict of interest, a defendant who entered a guilty plea must establish: (1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendant." *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.1987) (citation and footnote omitted).

## ANALYSIS

The Appellants contend that they received ineffective assistance of counsel because they were both represented by attorneys from the Jefferson County Public Defender's Office, which resulted in a conflict of interest. The Appellants further argue that because they were never advised by the trial judge of their right to conflict-free counsel as required by RCr 8.30, they did not waive that right.

■ At the outset, we note that the Commonwealth asserts that the Appellants failed to produce a complete record and that such failure precludes appellate review. As correctly noted by the Commonwealth, it is the Appellants' responsibility to present a complete record for review. *Steel Technologies, Inc. v. Congleton,* 234 S.W.3d 920, 926 (Ky.2007). The general rule is that "when the record is incomplete, this Court must assume that the omitted record supports the trial court." *Chestnut v. Commonwealth,* 250 S.W.3d 288, 303 (Ky.2008).

After receiving the original record on appeal, the Commonwealth discovered that the record was incomplete, the pages were out of order, and the video record transmitted did not contain the proceedings as designated or as certified. Thus, on February 25, 2009, the Commonwealth filed a Motion to Correct the Record. This Court subsequently entered an order on March 23, 2009, ordering the Jefferson Circuit Court Clerk, with the assistance of the Appellants, to accurately certify and transmit the record as designated. On July 13, 2009, the Jefferson Circuit Clerk filed a Re–Certification of Record on Appeal. The Commonwealth contends that the record is still incomplete because the video record only contains the September 10, 2007, evidentiary hearing and does not include the guilty pleas, arraignments, or any pretrial hearings. The Commonwealth asserts that because the record is incomplete, there is no way of determining whether the trial judge advised the Appellants of their right to conflict-free counsel in compliance with RCr 8.30.[3]

---

**3.** During oral arguments to this Court, there was an issue raised as to whether the record

on appeal included the January 16, 2004, probable cause hearing held in the Jefferson

However, our review of the record reveals that at the September 10, 2007, evidentiary hearing, the Commonwealth conceded that the trial judge did not conduct a colloquy with the Appellants regarding their waiver of dual representation similar to a plea of guilty pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Instead, the Commonwealth agreed that the only inquiry that took place was the following discussion between defense counsel and the trial court at the December 17, 2004, suppression hearing:

The Court: Okay, do we have a trial date?

McMeans: Yes we do, February 15.

The Court: Okay do we have waivers of dual representation? I was trying to look through—

McMeans: Yes we do. I know we've done them at least once um

The Court: Once is all we need. Mr. Guarnieri, do you remember?

Guarnieri: Judge to be honest with you I thought we may have but if not I'll file one with the court.

McMeans: We could've done them in district court—I believe.

Guarnieri: That's right.

McMeans: We filled them out in the district court and they may still be in the district court file.

Guarnieri: I'll file one in circuit court as well just to make sure that's not a problem. I have advised Mr. Mitchell … of a potential conflict and at this time he agreed with me to execute a waiver and is satisfied going forward with the Public Defender's Office whereby a potential conflict may exist. And at this time, if we haven't filed

one I will submit one in the next several days.

McMeans: And Edward Joseph Mitchell is in the same position. We've discussed at length and I do recall we signed one and went through it. It may be in the circuit court 13 file too.

The Court: Okay. Let's just make sure this record contains two waivers.

Because the Commonwealth conceded that this was the only inquiry the trial judge made, we conclude the record contains all the information needed to determine whether the trial judge advised the Appellants of their right to conflict-free counsel in compliance with RCr 8.30. Therefore, we will address the issues raised by the Appellants.

■ The Appellants argue that they received ineffective assistance of counsel because their attorneys were both employed by the Jefferson County Public Defender's Office. As a result, Appellants contend that their counsel was laboring under a conflict of interest which resulted in deficient representation. RCr 8.30 directly addresses the issue of an attorney's representation of multiple co-defendants. Further, the requirements of RCr 8.30 are implicated in cases where co-defendants are represented by attorneys from the same public defender's office. *Kirkland v. Commonwealth*, 53 S.W.3d 71 (Ky.2001).

RCr 8.30 prohibits dual representation of persons charged with the same offense unless:

(a) the judge of the court in which the proceeding is being held explains to the defendant or defendants the possibility of a conflict of interests on the part of the attorney in that what may be or seem to be in the best interests of one

District Court. The record did include an audio tape of the probable cause hearing, and a review of that hearing reflects that the trial

judge did not advise the Appellants of their right to conflict-free counsel.

client may not be in the best interests of another, and

(b) each defendant in the proceeding executes and causes to be entered in the record a statement that the possibility of a conflict of interests on the part of the attorney has been explained to the defendant by the court and that the defendant nevertheless desires to be represented by the same attorney.

In addition to the duties imposed upon the trial court, RCr 8.30(3) also imposes the following duties on counsel:

Upon receipt of any information reasonably suggesting that what is best for one client may not be best for another, counsel shall explain its significance to the defendant and disclose it to the court, and shall withdraw as counsel for one client or the other unless

(a) each such client who is a defendant in the proceeding executes a written waiver setting forth the circumstances and reiterating the client's desire for continued representation by the same counsel and

(b) such waiver is entered in the record of the proceeding.

▆▆▆ As with the waiver of other constitutional rights, the waiver of the right to conflict-free counsel should appear on the record as the "intentional relinquishment or abandonment of a known right." *United States v. Osborne*, 402 F.3d 626, 630 (6th Cir.2005) (internal quotations omitted). As noted by the Supreme Court of Kentucky in *Brewer v. Commonwealth*, 206 S.W.3d 313, 322 (Ky.2006), "an accused 'must' be able to waive the problem of dual representation so long as the waiver is done 'knowingly.'" (*quoting Brock v. Commonwealth,* 627 S.W.2d 42, 44 (Ky.App. 1981)). However, the trial courts "should all but insist on separate counsel, especially where counsel is appointed." *Id.*

▆▆▆ As discussed above, the only inquiry made by the trial court in this case with respect to the Appellants' right to conflict-free counsel was the discussion between defense counsel and the trial court at the December 17, 2004, suppression hearing transcribed above. Although it appears that the trial court was aware of the potential conflict, it is clear from the record that the trial court did not comply with its obligation to inform the Appellants of the potential consequences of dual representation as required by RCr 8.30(1)(a).

▆▆▆ Moreover, it appears that RCr 8.30(1)(b) was also not complied with in this case. As noted by the Supreme Court of Kentucky in *Brewer,* 8.30(1)(b) requires the defendant to execute a waiver "indicating that the possibility and problems of conflicts of interest have been explained to him *by the court* and that he nevertheless desires to be represented by the same attorney." 206 S.W.3d at 322 (*quoting Brock,* 627 S.W.2d at 44)(emphasis added). The trial court record contains the following "Waiver of Dual or Multiple Representation" executed by the Appellants:

The undersigned, Edward Jefferson Mitchell, a defendant before this Court charged with the offense(s) of Robbery I and Assault I, acknowledges that the undersigned attorney has explained and that he/she understands the possibility of a conflict of interests on the part of the assigned attorney, Rob Guarnieri, that what may be or seem to be in the best interests of this defendant may not be to the best interest of a codefendant, who is also represented by a Louisville Metro Public Defender. With that understanding, the undersigned nonetheless desires that Rob Guarnieri represent him/her in this proceeding and has no objection to another Louisville Metro Public Defender acting as counsel for the other person mentioned in this waiv-

er as being involved as a possible conflict of interest.[4]

Nowhere in the waiver does language exist indicating that the trial court explained to the Appellants the potential ramifications of conflicts of interest. Thus, the waiver signed by the Appellants also did not comply with RCr 8.30.

■ We conclude that trial counsel did err by undertaking dual representation without compliance with RCr 8.30. Under RCr 8.30, the Appellants should have been advised by the trial court of the potential consequences of the trial counsel's dual representation, and it was incumbent upon trial counsel to assure that the trial court complied with the rule.

■ However, even where, as here, RCr 8.30 is not complied with, the defendant is not automatically entitled to post-conviction relief. As noted in *Kirkland*, failure to comply with the requirements of RCr 8.30(1) is "not presumptively prejudicial and does not warrant automatic reversal." 53 S.W.3d at 75. "A defendant must show a real conflict of interest...." *Id*. *See also Sullivan*, 446 U.S. 335, 100 S.Ct. 1708 (a defendant must show an actual conflict of interest adversely affected the performance of his lawyer). An alleged violation of RCr 8.30 simply opens the door for a case-by-case evaluation to determine whether a defendant was in fact prejudiced by such a violation. *Id*.

■ In support of their claim of an alleged conflict and a consequent prejudice, the Appellants contend that there was an actual conflict because Son gave a post-arrest confession implicating Father. Moreover, Son entered a guilty plea pursuant to a negotiated, written plea agreement in which he agreed to testify against

Father. At all times prior to entering his guilty plea, Father maintained that he was innocent of the crime. Father now contends that he only pled guilty because Son had agreed to testify against him.

The Appellants rely on *Commonwealth v. Holder*, 705 S.W.2d 907 (Ky.1986), in support of their argument that there was an actual conflict and that they were prejudiced by such a conflict. In *Holder*, three criminal co-defendants were represented by one attorney. One of the co-defendants, Holder, made an out-of-court statement admitting his guilt and implicating the other two defendants, who maintained their innocence. In concluding that there is a "built-in conflict of interest" in such a situation, the Supreme Court of Kentucky noted that:

> Separate counsel would likely have explored the potential for a plea bargain for Holder based upon his plea of guilty and his agreement to testify against the other two respondents, whereas counsel in a joint representation of all three respondents could not ethically seek advantage for one at the expense of the other two.

*Id*. at 908. Therefore, the Supreme Court held that:

> When, as here, the trial court failed to comply with the simple requirements of RCr 8.30 and when, as here, the record demonstrates a conflict of interest between the respondents which could well have prejudiced the disposition of their cases, the judgment of conviction must be set aside.

*Id*. at 909. Thus, the Supreme Court affirmed this Court's decision to set aside the convictions of all three defendants. *Id*.

■ We find *Holder* to be factually similar to the instant case. As in *Holder*,

---

**4.** The same language is provided in the waiver signed by Edward Joseph Mitchell, except "Edward Joseph Mitchell" appears in all places where "Edward Jefferson Mitchell" is provided and "Carolyn McMeans" appears in all places where "Rob Guarnieri" is provided.

an actual conflict of interest arose when Son gave his post-arrest statement implicating Father and Father maintained his complete innocence. As a result of such conflict, what happened in this case is the exact scenario the Supreme Court warned against in *Holder*. Here, Son's plea bargain involved his agreement to testify against Father. As noted in *Holder*, when negotiating a plea agreement, counsel in a joint representation of more than one defendant cannot "ethically seek advantage for one at the expense of the other...." 705 S.W.2d at 908. Thus, counsel in the instant case could not negotiate a plea bargain for Son based upon his agreement to testify against Father. Therefore, based on *Holder*, there was an actual conflict of interest which prejudiced the disposition of the Appellants' cases.

The Commonwealth cites *Kirkland*, 53 S.W.3d 71, in support of its position that there was not a conflict. In *Kirkland*, two co-defendants, Kirkland and McKee, were convicted of murder and robbery in the first degree for robbing and killing the owner of a liquor store. *Id.* at 73. During their joint trial, Kirkland testified that he shot the liquor store owner, claiming that McKee had only accompanied him to the store. *Id.*

On appeal, McKee argued that the trial judge committed reversible error when she did not instruct him pursuant to RCr 8.30(1) about a possible conflict of interest because his counsel and Kirkland's counsel were both employed by the Fayette County Legal Aid, Inc. *Id.* at 74. In concluding that there was not a conflict of interest, the Supreme Court noted that Kirkland admitted he was the shooter and Kirkland's testimony regarding McKee's involvement consisted of nothing more than what McKee had already told his girlfriend and confessed to the police, i.e., that he accompanied Kirkland to the liquor store.

*Id.* at 75. Because Kirkland never contended that McKee was the one who shot the victim, no antagonistic defenses were comprised. *Id.* Thus, the Supreme Court concluded that the trial judge's failure to comply with RCr 8.30(1) was harmless error. *Id.*

Unlike in *Kirkland*, there was an actual conflict in this case. While the co-defendants in *Kirkland* made consistent statements, the statements made by the Appellants in this case were inconsistent. Specifically, Son confessed that he committed the robbery and assault but that he did it at the direction and planning of Father. However, Father maintained that he was innocent and that he was not involved. Because the Appellants made conflicting statements resulting in an actual conflict, we find *Kirkland* to be unpersuasive.

Accordingly, we reverse the order denying the Appellants' RCr 11.42 motions and remand this case to the Jefferson Circuit Court for a new trial with directions that new counsel be appointed.

ALL CONCUR.