RENDERED: APRIL 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0283-MR

ERIC R. WILLIAMS                                                          APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 19-CR-002326

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, DIXON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Eric R. Williams appeals the Judgment of Conviction and

Sentence entered February 5, 2021, by the Jefferson Circuit Court upon denying

his motion to withdraw his guilty plea pursuant to Kentucky Rules of Criminal

Procedure (RCr) 8.10. After careful review, we affirm.

On August 26, 2019, a Jefferson County grand jury returned an

indictment against Williams charging him with robbery in the first degree,

possession of a handgun by a convicted felon, wanton endangerment in the first degree, tampering with physical evidence, and persistent felony offender (PFO) in the first degree. On May 12, 2020, Williams entered a guilty plea. In exchange, the Commonwealth offered to dismiss the PFO charge and recommended a concurrent sentence of ten-years' incarceration on the remaining charges. However, the Commonwealth also agreed to amend the charge of robbery in the first degree to robbery in the second degree and recommend a sentence of seven-years' incarceration *if* Williams had no violations of the home incarceration program (HIP) pending sentencing (also known as a reverse hammer clause).

The trial court conducted a plea colloquy pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969). During the colloquy, Williams indicated he understood each of the rights he was giving up, including the right to a jury trial. He stated he had enough time to talk to his attorney and was satisfied with his attorney's advice. He also stated that no promises were made to him and that he was not threatened or coerced into pleading guilty. He indicated he understood the terms of the plea agreement. However, when the trial court read the facts of the case as submitted by the Commonwealth, the following exchange occurred:

> TRIAL COURT: On July 1, 2019, in Jefferson County, Kentucky, defendant went through the victim's pockets at gunpoint before he fired a shot at her. Police arrived on the scene and observed the defendant run behind the back of a vehicle and throw the handgun underneath it.

The defendant is a convicted felon. Do you admit on the record those are the true facts of this case?

WILLIAMS: I'm pleading guilty, how do I word that? I don't know what to say other than I am pleading guilty.

TRIAL COURT: Is there something in the thing I just read that you disagree with?

WILLIAMS: Yeah, but I'm pleading guilty to it, so I mean, yeah, but I mean I'm pleading guilty to it just so, uh yeah, I'm pleading guilty so I'm not trying to . . . .

TRIAL COURT: No, no, no I'm not trying to, I just want to make sure if there's something that, you know, we can review it before we go any further so if there's something you don't agree with, now's the time to tell me.

WILLIAMS: I don't even know how to word it, your honor. I mean I'm pleading guilty to it, but I don't know. All I have to say is, do I have to plead guilty to the story to plead guilty to the charge? Like, do I have to agree with how you all worded it, is that gonna affect my guilty plea?

COMMONWEALTH: I'm fine with him doing it pursuant to *Alford* [*North Carolina v. Alford*, 400 U.S. 25 (1970)] if he's acknowledging the facts the Commonwealth will prove at trial.

DEFENSE COUNSEL: If you do an *Alford* plea, you're saying you agree the Commonwealth may prove that at trial. You're not admitting that those are the true facts, but you believe the Commonwealth may prove it, therefore you want to accept the deal, but you're not admitting to the facts.

WILLIAMS:  Yeah [inaudible].  Is that okay for me to do that, then?  The *Alford* plea?

TRIAL COURT:  The *Alford* plea?

WILLIAMS:  Yes, ma'am.

. . . .

TRIAL COURT:  I just read you those facts and what you're saying and what you're agreeing to is that you're not saying those are the true facts of this case, but you're agreeing if it had gone to trial that the Commonwealth would have sufficient evidence, that there's a significant likelihood, you would have been convicted.  You agree to that?

WILLIAMS:  Yes, Ma'am.

Accordingly, because Williams did not agree with the facts as stated by the Commonwealth, but nevertheless wished to continue, his plea was entered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).

In June 2020, before sentencing occurred, Williams returned to jail for a violation of HIP due to admitted use of marijuana.  When the parties appeared for sentencing on October 2, 2020, defense counsel indicated that, due to the HIP violation, the Commonwealth had made a revised offer and Williams needed more time to consider it.  Sentencing was rescheduled for November 6, 2020.  At that time, the Commonwealth indicated that it would still amend the charges, but recommend the sentences run consecutively for a total of fourteen-years'

incarceration with parole eligibility at 20 percent. Williams again indicated that he

needed more time to speak with his attorney, but addressed the trial court stating,

in relevant part:

> No way do they have enough evidence to convict me, but
> I was going to go ahead and take the deal to get out and
> to watch my daughter graduate and do some other things,
> but the whole case has changed because of new
> information that, you know, me and my counsel has
> acquired, so I would just really like this time to check it
> over with my attorney[.]

Defense counsel indicated that Williams was not making a motion to

withdraw his plea at that time and sentencing was rescheduled for January 22,

2021. In the interim, defense counsel filed a motion to withdraw Williams' plea

pursuant to RCr 8.10. Although the motion was vague in the reasons Williams

wished to withdraw his plea, the primary reason cited was the change in the offer

from the Commonwealth. The Commonwealth objected.

On January 22, 2021, the court conducted a hearing on Williams'

motions. At the hearing, defense counsel stated, in relevant part:

> Mr. Williams again is now facing a much higher sentence
> and he took this deal based on some of the factors that he
> believed was going to happen. Those factors fell
> through. Some of those were his fault and some were not
> his fault, but really, when he took the plea, he was
> looking at a seven-year sentence at 20% eligibility
> [inaudible] and he could deal with that, that wouldn't be
> a problem for him and that was to serve. But even at his
> plea, your honor, he expressed reservations about

pleading guilty to the robbery and he expressed reservations about pleading guilty to the robbery since day one that I've known him and, at the risk of revealing privileged information, he told me he didn't do the robbery, he wasn't guilty of it. He took the deal because it was a good deal, at least as amended, but again, other factors intervened and the deal was not amended, but again, that's why he took that deal. But at the end of the day, your honor, he has pled guilty to Robbery 1, he maintains that he did not commit that Robbery 1 [inaudible], he didn't rob that person. He pled guilty based on other factors – you know the reasons people plead guilty in *Alford* – where they don't admit responsibility, but they want the deal because they don't want the risk of going to trial with PFO 1 and all the other things.

The Commonwealth argued in response that Williams made no allegations of coercion or inability to understand the plea he entered into. Likewise, the Commonwealth asserted that Williams only sought to withdraw his plea after he violated the HIP conditions and the reverse hammer clause of the original offer came into effect. The Commonwealth also revealed that Williams offered to withdraw his motion if the Commonwealth would again agree to amend the offer down to a sentence of seven-years' incarceration with 20 percent parole eligibility.

Williams was permitted to address the court, although defense counsel stated it was against his advice. Williams was not put under oath. He reiterated numerous times that he did not commit a robbery, but did state that he was willing to accept sentences for charges involving the gun. Williams focused on assertions

-6-

that he was in a car on the night of the incident and that the car was never returned to him. He insisted this changed the "parameters" of his case. Regarding defense counsel's performance, Williams stated,

> I'm not trying to say [defense counsel] is this that or the other, but I mean from the word jump they said the feds had this case. That was the whole thing. I'm arguing with [defense counsel] can you find something about getting my vehicle back, can you look at my DVD and he never did none of that, not once. That would have changed the whole parameter of the case. He never argued anything. There was only one motion filed in eleven months on my case. This is a serious case and there is only one motion filed in eleven months? It just don't [inaudible] well with me at this point.

The trial court indicated that it would review the plea colloquy and subsequently make a ruling on the motion. The parties appeared before the trial court again on February 5, 2021, for sentencing. At that time, the court found no basis to grant Williams' motion although it did note that there was some hesitation on Williams' part during entry of the plea. Williams was convicted and sentenced to ten-years' incarceration pursuant to the original plea agreement. This appeal followed. Further facts will be developed as necessary.

Williams contends he was deprived of effective assistance of counsel pursuant to the Sixth Amendment of the United States Constitution due to defense counsel's conflict of interest when he continued to represent Williams after Williams indicated he wished to withdraw his guilty plea. Williams relies on

*Commonwealth v. Tigue*, 459 S.W.3d 372, 384 (Ky. 2015), and argues his defense counsel had a conflict of interest. Specifically, Williams argues the conflict arose "when an attorney has to contradict the statements and wishes of their client in open court, as necessarily happens when a defendant moves to withdraw an earlier plea prepared by the same attorney on the grounds that it was entered involuntarily, unknowingly, or with ineffective assistance of counsel" citing to *Tigue*, 459 S.W.3d at 387. Appellant's Brief at 6. For the reasons to follow, we hold that *Tigue* is distinguishable and, therefore, affirm the circuit court.

This Court has previously set forth the standard of review when a conflict of interest is alleged:

> The United States Supreme Court set forth the standard for reviewing conflict of interest cases in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), and summarized it again in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as follows:
>
> > In *Cuyler* . . . the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts . . . it is reasonable for the criminal justice

-8-

system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. *Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."*

(Emphasis added). Thus, we must determine whether trial counsel actually represented conflicting interests, and if so, whether the conflict adversely affected trial counsel's performance.

However, when a movant has pled guilty, this test is slightly modified. "[I]n order to successfully assert a claim of ineffective counsel based on a conflict of interest, a defendant who entered a guilty plea must establish: (1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendant." *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987) (citation and footnote omitted).

*Mitchell v. Commonwealth*, 323 S.W.3d 755, 759-60 (Ky. App. 2010).

Under Kentucky Rules of Criminal Procedure (RCr) 8.10, a defendant who has pleaded guilty may withdraw the plea under certain conditions. "If the plea was involuntary, the motion to withdraw it must be granted. However, if it was voluntary, the trial court may, within its discretion, either grant or deny the motion." *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004). Accordingly, we first turn to the statements made by Williams during his guilty

plea. He acknowledged the rights he was giving up. He indicated that he had enough time to speak with his attorney and that he was satisfied with his attorney's advice. He also told the trial court that he was "well aware" of what he was doing. "[A] defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 568 (Ky. 2006) (internal quotation marks and citation omitted). Even though he did not agree with the facts as stated by the Commonwealth, Williams expressed a clear and unambiguous desire to move forward, and ultimately entered an *Alford* plea. *Alford*, 400 U.S. 25.

The facts of this case are distinguishable from those of *Tigue*, *supra*. We note that Tigue entered a guilty plea, but called his counsel on the same day wanting to withdraw it. Counsel did not acknowledge Tigue's requests and did not file a motion. At sentencing, Tigue orally asked the court to withdraw his plea. He said his plea was involuntary because his defense team had threatened him and never showed any interest in defending him. Defense counsel was totally silent when Tigue made the oral request to withdraw his plea. His request was denied and Tigue filed a motion pursuant to RCr 11.42 after sentencing.

The Kentucky Supreme Court held that Tigue's right to counsel was violated because counsel refused to help him seek withdrawal of his guilty plea and

the trial court refused to consider his *pro se* request. *Tigue*, 459 S.W.3d at 386.

The Supreme Court also held that defense counsel had a conflict of interest because Tigue's primary allegations were that counsel threatened him and refused to prepare a defense. *Id.* at 387.

In this case, Williams' counsel both filed and argued the motion to withdraw the plea. Counsel stated during the hearing that he agreed with Williams' desire to withdraw the plea. Therefore, counsel's interests were not in opposition to Williams' even though counsel had negotiated the terms of the plea. Although Williams was not put under oath at the hearing, the only complaints he made regarding defense counsel were related to allegations that counsel did not try to get his vehicle back. Williams further claims that counsel never argued on his behalf (after he had just finished making an extensive argument) or filed any motions, which is clearly refuted by the record on appeal. We note that Williams does not identify what other motions he believed counsel should have filed. Williams also stated that defense counsel did not advise him regarding an *Alford* plea. *Even if* Williams had not been previously advised regarding the possibility of entering an *Alford* plea, counsel advised him of it on the record during the plea colloquy. Moreover, the Commonwealth did not object to Williams' *Alford* plea and the offer did not change as a result.

-11-

We find additional guidance in *Dorsey v. Commonwealth*, 565 S.W.3d 569 (Ky. 2018). Therein, when Dorsey sought to withdraw his guilty plea, the same defense counsel continued to represent him. Dorsey alleged that he did not understand the role of the judge in sentencing and thought the judge had the discretion to modify his parole eligibility. The Kentucky Supreme Court held that there was no conflict of interest because "Dorsey's counsel did not put his own interests ahead of his client's and did not attack Dorsey's credibility. Dorsey was not accusing his attorney of making misrepresentations or neglecting to tell him critical information regarding the plea." *Id.* at 575. Similarly, no such arguments were presented by Williams that his attorney had placed his personal interests ahead of Williams' interests. However, our analysis doesn't end there.

We now turn to the timeline between entry of the guilty plea and sentencing. Williams returned to jail for a HIP violation approximately one month after he entered his plea pursuant to the plea agreement negotiated by his counsel. When the parties returned for sentencing in October 2020, Williams had not made, nor did he give any indication that he intended to file a motion to withdraw his guilty plea. In November, the parties appeared again for sentencing and the latest offer from the Commonwealth was reviewed on the record. Williams indicated he understood the new offer and wished to have more time to talk to his attorney. Although Williams maintained that he did not commit the robbery, Williams

-12-

expressed no dissatisfaction with his attorney and stated he agreed to the original offer "to get out and to watch [his] daughter graduate and do some other things." In the meantime, defense counsel filed a motion to return Williams to HIP pending sentencing. The trial court denied the motion on December 4, 2020. On January 12, 2021, defense counsel then filed the motion to withdraw the guilty plea on behalf of Williams. This timeline is important because we agree with the trial court and the Commonwealth that Williams simply changed his mind regarding the original plea agreement once he violated HIP and was returned to jail. Upon violating the agreement, Williams was then faced with ten-years' incarceration and parole eligibility at 85 percent. In other words, Williams violated his plea deal prior to sentencing, which rescinded the seven-year incarceration agreement, and thus triggered his desire to withdraw his plea. Particularly telling is that, at the sentencing hearing, the Commonwealth revealed Williams offered to withdraw his motion to withdraw the guilty plea if the Commonwealth would again agree to amend the offer down to a sentence of seven-years' incarceration with 20 percent parole eligibility.

Although Williams may have regretted agreeing to the terms of the original plea agreement, neither hindsight nor a change of mind is sufficient grounds to warrant withdrawal of a guilty plea. *See Commonwealth v. Pridham*, 394 S.W.3d 867, 885 (Ky. 2012). The United States Supreme Court has held:

-13-

> [a] plea of guilty entered by one fully aware of the direct
> consequences, including the actual value of any
> commitments made to him by the court, prosecutor, or
> his own counsel, must stand unless induced by threats (or
> promises to discontinue improper harassment),
> misrepresentation (including unfulfilled or unfulfillable
> promises), or perhaps by promises that are by their nature
> improper as having no proper relationship to the
> prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks, citation, and footnote omitted). The Court went on to note that "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* at 757.

While we recognize, and our caselaw supports, that a defendant's desire to withdraw his guilty plea may often conflict with the advice and interests of the defense counsel who negotiated the terms of the plea, we cannot say, based on the record before us, that Williams' counsel had a conflict of interest or was otherwise ineffective in assisting him to withdraw the plea.

For the foregoing reasons, we affirm the Judgment of Conviction and Sentence entered by the Jefferson Circuit Court.

ALL CONCUR.

-14-

BRIEFS FOR APPELLANT:

Jared Travis Bewley
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky