RENDERED: MAY 10, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0317-MR

HOWARD GROSS        APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM CASEY CIRCUIT COURT<br>HONORABLE JUDY VANCE MURPHY, JUDGE<br>ACTION NO. 15-CR-00033 |

COMMONWEALTH OF KENTUCKY        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

ECKERLE, JUDGE: A jury convicted Appellant, Howard Gross ("Gross"), of multiple drug-trafficking offenses stemming from undercover marijuana buys at his residence. The Trial Judge sentenced him to imprisonment for seven years. He appeals the judgment and sentence as a matter of right. Finding no error, we affirm.

## BACKGROUND

The Casey County Grand Jury indicted Gross with three counts of trafficking in marijuana, first offense, over eight ounces but less than five pounds, and one count of trafficking in marijuana, first offense, five pounds or more. The three lesser trafficking charges arose from a confidential informant's controlled buys of approximately one-pound quantities of marijuana. Three of the four charges also included a firearm enhancement, as Gross allegedly showed and cocked a gun toward the undercover informant during a buy, had a gun in his chair during a buy, and had guns at his residence where marijuana was found during the execution of the search warrant. However, the jury rejected the gun enhancements.

Each controlled buy occurred at Gross's residence in 2015 and was video recorded via an undercover camera carried by Glen Caldwell ("Caldwell"), the confidential informant. Caldwell, who previously had been found with marijuana on his own property but was never charged with any crimes relating thereto, operated pursuant to an agreement with the police for payment for each undercover buy. The videos of the buys, which show Caldwell purchasing bags of marijuana from Gross, were shown to the jury. Gross handed over bags of marijuana, took cash from Caldwell, counted the cash, and told Caldwell about the quality of the marijuana. Gross also informed Caldwell that purchasing three or four pounds at a time would not result in a discount. Each buy resulted in almost a

pound of marijuana being exchanged for over $2,000.00 in buy money. The buy money's serial numbers were tracked, and some of it was discovered in the purse of Kim Allen ("Allen"), Gross's girlfriend, while other bills were found in Gross's residence, including in one of his medicine cabinets, and in Gross's safety deposit box.

After these three buys, police executed a search warrant on Gross's residence. Officers discovered over 20 pounds of marijuana in large bags, numerous guns, numerous vehicles, marijuana seeds, scales, bags, and tens of thousands of dollars, including over $40,000.00 in cash hidden in a lampshade. Police also discovered that Gross had over $100,000.00 in his bank accounts and safety deposit box. In total, Gross had over $260,000.00 in cash and assets. These assets are in stark contrast with Gross's tax returns showing adjusted gross incomes of $1,497.00 in 2011 and $3,419.00 in 2013. The greater trafficking charge related to the large stash of marijuana discovered during the execution of the search warrant.

Allen, who obtained pre-trial diversion in exchange for her testimony, served as a witness at Gross's trial. Allen explained that after she began dating and living with Gross, she learned that he was selling marijuana. He showed her how to "clean" marijuana, and she claimed that removing of impurities was the extent of her involvement in the marijuana trafficking.

Gross's counsel thoroughly cross-examined Allen, attempting to paint her as the principal trafficker, one of his two defenses. To that end, Gross testified and initially explained that his substantial cash assets were derived from funds that he had received from a company with which he contracted to harvest timber from his farm. Gross proffered documentation and checks showing that he had received tens of thousands of dollars from this contract. Gross claimed that he hid in a lampshade over $40,000.00 that he had recently received from the timber contract, as he was allegedly afraid of Allen taking it from him. Gross claimed that Allen was the trafficker, and he only participated in the sales to "protect" Allen's interests.

For his second defense, Gross proffered that the Commonwealth had not proven that the drugs met the definition of marijuana. Gross cross-examined the Commonwealth's crime-lab scientist who had tested the drugs to see if she had determined the percentage of tetrahydrocannabinol ("THC"). She conceded that she had not conducted a percentage test and could confirm only that the drugs contained THC. With a later witness, a narcotics officer with decades of experience, the Commonwealth established that based on the officer's extensive prior experience, the plants and the seeds appeared to be marijuana.

As stated above, the jury found Gross guilty of the four trafficking charges, but they rejected the firearm enhancements. They recommended a

sentence of seven years in total; the Trial Court entered a judgment and sentence accordingly. Gross appealed as a matter of right and raises four issues on appeal.

## ANALYSIS

**I.**      **Did the Trial Court err by not excluding Allen's testimony due to a failure to comply with RCr[1] 8.30?**

Gross first argues that Allen's testimony should have been excluded due to an RCr 8.30 violation, which occurs when written waivers of conflict of counsel are not obtained from co-defendants (or defendants charged with similar offenses arising out of the same incident) who are represented by the same counsel, and the resulting violation of the right to counsel under the Sixth Amendment to the United States Constitution. *See generally Beard v. Commonwealth*, 302 S.W.3d 643, 646 (Ky. 2010) ("This is because such a conflict of interests has the effect of denying the defendant the Sixth Amendment right to counsel . . . .") (citation omitted). The Commonwealth seemingly concedes that RCr 8.30 was not followed, but it nonetheless argues that no prejudice can be shown from the dual representation.

Having considered both parties' arguments, we hold that no reversible error occurred here, as neither the rule violation nor the alleged Sixth Amendment violation requires suppression of evidence at Gross's trial. Accordingly, we agree

---

[1] Kentucky Rules of Criminal Procedure.

with the Trial Court that Gross's motion to exclude Allen's testimony should have been denied.

RCr 8.30 requires separate counsel for co-defendants or defendants accused of the same offense or offenses arising out of the same incident or series of related incidents. This rule may be waived if the Trial Court explains the potential conflict to the defendants,[2] each of whom orally waives the potential conflict. Each then executes and causes to be placed in the record a written statement that the defendants are aware of a potential conflict and desire to waive any potential conflict and proceed with the same counsel.

In the case *sub judice*, the Grand Jury separately indicted Gross and Allen for offenses arising from the same nucleus of operative facts. They were represented by the same attorney. The Commonwealth, in a lengthy and detailed pleading noting all of the connections between Gross's and Allen's cases, moved to consolidate. Allen appears to have accepted a plea agreement prior to the Trial Court's ruling on the motion; thus, her case was never consolidated.[3] It does not appear that any RCr 8.30 waiver was ever executed, although it appears necessary.

---

[2] The Trial Court also typically explains the difference between a potential conflict and an actual conflict, the latter of which may not be waived.

[3] However, the Trial Court consolidated the cases for Gross and Burress, but Burress never testified at Gross's trial, and Gross raises no issues with Burress.

Gross then attempted to accept a plea agreement, but the terms were ultimately rejected by the Trial Court (in part because the police opposed it). Gross's attorney then withdrew from the case, and Gross proceeded with a newly-retained, private counsel who did not appear to have ever represented Allen (or Burress).

Newly-retained counsel later filed a motion to exclude any testimony at trial of either Allen (or Burress, who ultimately never testified) due to the failure to comply with RCr 8.30. The Commonwealth opposed the motion, noting that suppression or exclusion of testimony is not a proper remedy for an RCr 8.30 violation. The Trial Court agreed. It denied the motion to exclude and found Gross was not prejudiced by Allen's plea, as Gross had not yet proceeded to trial and, by implication, no longer had an attorney laboring under a potential or actual conflict of interest.

On appeal, both Gross and the Commonwealth rely upon myriad cases, all of which concern a denial of one's Sixth Amendment right to counsel and whether such a denial requires reversal and remand for a new trial. *See, e.g.*, *Kirkland v. Commonwealth*, 53 S.W.3d 71 (Ky. 2001); *Mitchell v. Commonwealth*, 323 S.W.3d 755 (Ky. App. 2010); and *Commonwealth v. Holder*, 705 S.W.2d 907 (Ky. 1986). Notably, these types of cases involve whether a defendant was denied his or her Sixth Amendment right to counsel during the pre-trial or trial

-7-

proceedings because his or her attorney was laboring under a potential or actual conflict of interest. *Samuels v. Commonwealth*, 512 S.W.3d 709, 712-13 (Ky. 2017) (discussing when reversal and remand for a new trial in such circumstances is automatic or requires a showing of prejudice). If a defendant is denied his or her right to counsel, the remedy is reversal and remand for a new trial with conflict-free counsel. *See, e.g.*, *Mitchell*, 323 S.W.3d at 764 ("Accordingly, we reverse the order denying the Appellants' RCr 11.42 motions and remand this case to the Jefferson Circuit Court for a new trial with directions that new counsel be appointed."); *Banks v. Warden, Louisiana State Penitentiary*, No. 1:09-CV-02101, 1:09-CV-02106, 2011 WL 5157764 (W.D. La. 2011) (recommending granting petition for a writ of habeas corpus, releasing inmate from detention, and re-arraigning defendant within 60 days).

Such is not the case here. The remedy permitted – reversal and remand for a new trial with conflict-free counsel – would be a futile gesture because Gross had conflict-free counsel when he went to trial. There is no known or apparent conflict between Gross's trial counsel and Allen or any other witness. Gross's counsel was free to represent Gross within the proper confines of his duties as counsel (and his counsel continues to represent Gross on appeal), including the cross-examination of Allen. Gross's counsel provided a vigorous cross-examination of Allen, depicting Allen as the mastermind of the trafficking

operation.  Because Gross's trial counsel was not laboring under any conflict of interest, Gross can neither demonstrate a Sixth Amendment violation that affected his trial nor any prejudice resulting from any potential or actual Sixth Amendment violation during Allen's plea process.  The Trial Court properly denied his motion to exclude Allen's testimony.

## II.     Did the Trial Court err by Refusing Gross's Proposed Jury Instructions?

Gross next argues that the Trial Court erred by refusing to give jury instructions on conspiracy, facilitation, and a definition of marijuana.

"[I]t is the duty of the court to prepare and give instructions on the whole law and this rule requires instructions applicable to every state of case deducible or supported to any extent by the testimony."  *Taylor v. Commonwealth*, 671 S.W.3d 36, 41 (Ky. 2003) (quoting *Kelly v. Commonwealth*, 267 S.W.2d 536, 539 (Ky. 1954)) (alterations in original).  "Trial courts must construe the evidence in favor of the party seeking the instruction."  *Id.* (citing *Allen v. Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011)).  A Trial Court must review each trial's particular factual and evidentiary subtleties to determine what instructions are warranted; thus, we review such decisions for an abuse of discretion.  *Sutton v. Commonwealth*, 627 S.W.3d 836, 847-48 (Ky. 2021).  A Trial Court abuses its

discretion when it acts arbitrarily, unreasonably, unfairly, or it applies the wrong legal standard. *Miller v. Eldridge*, 146 S.W.3d 909 (Ky. 2004).

Gross first claims that the Trial Court abused its discretion by failing to give a conspiracy instruction on the trafficking charges, as he claims the evidence supported a theory that he and Allen conspired to commit the crimes. Here, though the evidence may have supported a conspiracy instruction, any error by failing to give an instruction on conspiracy was harmless because Gross would have been subject to the same penalties. KRS[4] 218A.1402 ("Any person who commits a criminal conspiracy as defined in KRS 506.040 to commit any offense in this chapter shall be subject to the same penalties as provided for the underlying offense as specified in this chapter."). "[J]ury instructions may sometimes be 'an unfortunate, yet ultimately harmless error.'" *Manery v. Commonwealth*, 492 S.W.3d 140, 150 (Ky. 2016) (quoting *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky. 2008)). Harmless error exists "when the Commonwealth can show 'affirmatively that no prejudice resulted from the error.'" *Id*. As Gross would have received the same penalty under his conspiracy theory, any error in the failure to give the instruction was harmless.

Gross next argues the Trial Court erred by failing to give a facilitation instruction. Gross claims that his testimony and the other evidence supported a

---

[4] Kentucky Revised Statutes.

theory that Allen committed the crimes and Gross only facilitated the same. Facilitation is not *a fortiori* a lesser-included offense of trafficking in a controlled substance, as facilitation requires proof of an additional and completely different fact than the principal offense. *Houston v. Commonwealth*, 975 S.W.2d 925, 930 (Ky. 1998). Namely, trafficking requires "proof that the defendant, himself, knowingly and unlawfully committed the charged offense." *Id*. However, facilitation requires proof that "someone other than the defendant committed the object offense and the defendant, knowing that such person was committing or intended to commit that offense, provided that person with the means or opportunity to do so." *Id*. To that end, if a person is charged with complicity to traffic in controlled substances, the person may be entitled to a criminal facilitation instruction. *Id*. (citing *Luttrell v. Commonwealth*, 554 S.W.2d 75, 79 (Ky. 1977)).

Assuming, *arguendo*, that Gross was entitled to a complicity instruction via Gross's conspiracy theory, *c.f. Beaumont v. Commonwealth*, 295 S.W.3d 60, 69 (Ky. 2009) ("Complicit conduct can be shown through . . . the existence of a basic conspiracy . . . ."), he was not also entitled to a facilitation instruction because he was not "wholly indifferent to the actual completion of the crime, *i.e.*, without the intent that the crime be committed." *Thompkins v. Commonwealth*, 54 S.W.3d 147, 151 (Ky. 2001). The evidence showed that Gross knew trafficking was occurring, either because he was trafficking or because Allen

-11-

was trafficking, and he intended the crime to be committed for his own or Allen's profit. Video captured Gross exchanging drugs and counting cash, and he admitted at trial that he did the same to protect Allen's interests. Accordingly, Gross lacked the necessary mental state for a facilitation instruction because he was admittedly not indifferent to the crime's commission. There being no evidentiary basis for a facilitation instruction, we hold that the Trial Court did not err by denying Gross's request for the same.

Finally, Gross requested statutory definitions of marijuana, KRS 218A.010(28), and industrial hemp, KRS 260.850(5). Gross ostensibly wanted the Trial Court to inform the jury that the THC level must be greater than 0.3 percent for cannabis to be considered marijuana and not industrial hemp. A substantially similar argument was rejected in a very thorough analysis by a panel of this Court some seven years ago.[5] *Lundy v. Commonwealth*, 511 S.W.3d 398, 404-07 (Ky. App. 2017).[6] There, it was held that the Commonwealth only had to prove the THC content of suspected marijuana if the defendant was a licensed grower or processor of industrial hemp. No evidence was introduced that Gross was a

---

[5] Notably, two of the Judges on that panel are now Justices at the Kentucky Supreme Court. Also, the appellant in that case was represented by Gross's current, appellate counsel.

[6] The General Assembly recently modified the definition of "marijuana" in KRS 218A.010(28) to address this issue. The current definition specifically excludes "[i]ndustrial hemp that is in the possession, custody or control of a person who holds a license issued by the Department of Agriculture permitting that person to cultivate, handle, or process industrial hemp[.]" *Id.* The statutory definition essentially adopts the reasoning of Lundy.

licensed grower or processor of industrial hemp. Accordingly, the Trial Court did not abuse its discretion by declining to instruct the jury on these definitions. *Lundy*, 511 S.W.3d at 407 ("Absent some evidentiary foundation that [the defendant] was a licensed industrial hemp grower or a manufacturer of hemp products, the trial court properly denied the requested instruction. We find no error in the instructions."). There likewise being no error with the jury instructions here, we affirm the judgment and sentence on these grounds.

### III. Did the Trial Court Err by Not Granting a Directed Verdict of Acquittal?

Gross next argues that the Trial Court erred by not directing a verdict of acquittal because the Commonwealth allegedly failed to prove an element of the offense of trafficking in marijuana, namely, that the marijuana plants contained a sufficient percentage of THC to constitute the legal definition of marijuana. Again, this argument was rejected in *Lundy*, *supra*, which is controlling authority. Entitlement to a directed verdict would require some evidence that Gross had a license to grow or process industrial hemp. No such evidence was introduced. Accordingly, the Trial Court did not err by denying Gross's motion for a directed verdict on this issue.

**IV.   Is Gross's Forfeiture Issue Before Our Court?**

Finally, Gross argues multiple allegations of error relating to potential forfeiture of his property.  He claims that these issues are preserved through motions he filed to release the *lis pendens* on his property and other such motions. Yet, he directs us to no substantive rulings on any of those motions, and a review of the record indicates that forfeiture issues were reserved until after the trial.  The Commonwealth argues that any forfeiture issues are not before us and attaches a CourtNet 2.0 Docket Sheet showing that a forfeiture hearing was held months after the record in the instant case was certified.

We need not address the CourtNet information.  *See Jackson v. Est. of Day*, 595 S.W.3d 117, 126 (Ky. 2020) ("CourtNet warns its users that it is not intended to be an official court record.").  *See also Garrett v. Commonwealth*, 534 S.W.3d 217, 226 (Ky. 2017), and *Finnell v. Commonwealth*, 295 S.W.3d 829, 834 (Ky. 2009).  Gross all but concedes there is no ruling for us to review by averring in his brief that a forfeiture proceeding was held *after* the record was certified and "is still pending a ruling[.]"  Thus, we have no judgment to review.  *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014) ("As an appellate court, we review judgments; we do not make them.").

## CONCLUSION

Gross's four allegations of error fail on appeal. Accordingly, we AFFIRM the judgment and sentence entered against Gross.

ALL CONCUR.


BRIEFS FOR APPELLANT:

C. Thomas Hectus
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky